UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | |
|---|---|
| In re: | Chapter 15 |
| North Pointe Holdings (BVI) Ltd. (in Liquidation), *et al*., | Case No. 18-24659-SMG |
| Debtors in Foreign Proceedings.[1] | Jointly Administered |

**DECLARATION OF MICHAEL PEARSON IN SUPPORT OF MOTION OF THE JOINT OFFICIAL LIQUIDATORS (IN THEIR CAPACITY AS FOREIGN REPRESENTATIVES) FOR ORDER APPROVING COMPROMISE AND SETTLEMENT WITH DEUTSCHE BANK**

I, Michael Pearson, hereby declare as follows:

1. I am over the age of 18, and if called upon, would completely testify to all matters, set forth in this statement based upon my own personal knowledge, my review of relevant documents, information provided to me, or my opinion based upon my general knowledge of the Chapter 15 Debtors.

2. I am co-founder of FFP Limited, which is domiciled in the Cayman Islands, and FFP (BVI) Limited, which is domiciled in the British Virgin Islands (together "**FFP**"). Together with my colleagues Andrew Childe and Anna Silver, I have been appointed as liquidator of each of the Chapter 15 Debtors under, respectively, the laws of the Caman Islands, the British Virgin

---

[1] The "***Chapter 15 Debtors***" are (i) Diversified Real Estate Development Ltd. (in Official Liquidation); (ii) GMS Global Market Step Up Note Ltd. (in Official Liquidation); (iii) Preferred Income Collateralized Interest Ltd. (in Official Liquidation); (iv) Sentinel Investment Fund SPC (in Official Liquidation); (v) SG Strategic Income Ltd. (in Official Liquidation); (vi) Sports Aficionados Ltd. (in Official Liquidation); (vii) Vanguardia Group Inc. (in Official Liquidation); (viii) Vanguardia Holdings Ltd. (in Liquidation); (ix) Spyglass Investment Management Ltd. (in Liquidation); (x) North Pointe Holdings (BVI) Ltd. (in Liquidation); (xi) Biscayne Capital Holdings Limited (in Creditor Voluntary Liquidation); and (xii) Biscayne Capital (B.V.I.) Ltd. (in Liquidation).

Islands, and Bermuda. I am licensed or otherwise authorized to act as a liquidator under the laws of the Cayman Islands, British Virgin Islands, and Bermuda.

3. I am giving this declaration in support of the *Motion of the Joint Official Liquidators (in Their Capacity as Foreign Representatives) for Order Approving Compromise and Settlement with Deutsche Bank* [D.E. 262] filed on January 23, 2024 (the "**Settlement Motion**").[2]

4. As detailed in Settlement Motion, the Liquidators seek an order (a) approving the Liquidators' compromise and settlement with Deutsche Bank pursuant to Settlement Agreement, which settles all claims and potential claims that the Liquidators and Deutsche Bank asserted or could have asserted against each other relating to the Biscayne Capital Scheme, and (b) granting such other and further relief as the Court deems just and proper.

5. From the commencement of the Liquidations, it was clear that any recovery for Noteholders would be speculative. At the first meeting of creditors of the Note Issuers (held in Miami in December 2018), I announced that none of the Note Issuers held any substantial assets with which to repay Noteholders and that the recovery for all Noteholders would be dependent upon identifying the wrongdoers who were responsible and holding them to account.

6. The Liquidators have conducted a substantial investigation into the circumstances requiring the commencement of the Liquidations, specifically the facts surrounding the Biscayne Capital Scheme and the potentially culpable parties. The Liquidators served approximately 100 subpoenas, collected approximately 8,000,000 documents, and held hundreds of hours of voluntary interviews with cooperating parties. The Liquidators also have commenced four civil actions in the United States against a total of 100 different defendants and have otherwise entered into tolling agreements and settlement discussions with several other parties. Because there are no physical

---

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Settlement Motion.

assets of the Note Issuers, any recovery for Noteholders and other creditors will come only from litigation judgments and settlements.

7. In the Liquidations, an ad hoc committee of creditors (the "**Ad Hoc Committee**") has been formed to consult and communicate with the Liquidators. The Liquidators communicate all major developments with the Ad Hoc Committee and seek its input and consultation on major decisions impacting the Liquidations, including the proposed Settlement Agreement. The Ad Hoc Committee supports entry into the Settlement Agreement.

8. The Settlement Agreement is the culmination of a multi-year investigation into Deutsche Bank's activities related to the Biscayne Capital Scheme, as well as more than two years of litigation, including a trial by jury, and multiple months of settlement negotiations after the parties filed appeals with the United States Court of Appeals for the Eleventh Circuit.

9. The Settlement Agreement requires Deutsche Bank to pay $43.5 million into an interest-bearing escrow account, at a prevailing market rate, within fourteen days of full execution of the Settlement Agreement. The full amount of these funds were received by the escrow agent on February 2, 2024.

10. Within seven days of final Court Approvals, the Settlement Sum together with all accrued interest, will be released from escrow to the Liquidators in exchange for the Mutual Release, Dismissal of Claims, and Dismissal of the Appeals becoming effective. The Settlement Agreement is a bilateral agreement between the Liquidators and Deutsche Bank, and it seeks no relief related to any third party. A true and correct copy of the Settlement Agreement is attached to the Settlement Motion as Exhibit B.

11. Prior to filing the Settlement Motion, the Liquidators sought and received approval to enter into the Settlement Agreement from the Cayman Court, the Court with primary

supervisory authority over the Liquidators. In the Cayman Approval Order, the Cayman Court sanctioned (i.e., approved) the Liquidators' entry into a settlement on the commercial terms set forth in the Settlement Agreement by an order entered on December 15, 2023. A true and correct copy of the Cayman Approval Order is attached to the Settlement Motion as Exhibit C.

12. The determination to enter into the Settlement Agreement and seek approval for it by this Court and the Cayman Court is the product of extensive analysis by the Liquidators of their claims after the conclusion of the trial against Deutsche Bank, in consultation with their counsel. I believe that the compromise set forth in the Settlement Agreement is fair and reasonable and is the product of vigorous negotiation between the parties thereto acting in good faith and with advice of knowledgeable and sophisticated counsel.

13. In coming to this determination, the Liquidators considered the opportunities and risks associated with continuing the litigation versus entering into the Settlement Agreement. In the Action, the Liquidators brought a total of eight claims against Deutsche Bank. All but one of these claims was resolved in favor of Deutsche Bank. The Liquidators were able to secure a $95 million judgment on the remaining claim, which was a claim for negligence. Deutsche Bank has taken an appeal of the Amended Judgment.

14. The Liquidators are fully prepared to defend the Amended Judgment on appeal but are mindful of the potential risks including a ruling that requires a retrial, or potentially, resulting in a complete loss without a retrial. I understand that Deutsche Bank has presented seven different issues for appellate review. I have been informed that each of these seven grounds on appeal has an independent prospect of reversing the Amended Judgment.

15. The Liquidators have also taken the timing of the appeal into account in assessing the settlement. Were the Liquidators not to enter into the settlement, we have assessed that a "best-

DocuSign Envelope ID: D620F936-032B-4F06-B23F-D6914AC086D3
Case 18-24659-SMG    Doc 267    Filed 02/26/24    Page 5 of 8

case" scenario for the litigation, given the likely timeline of the appeal, may be a final judgment in late 2024 and more likely into 2025, before the appeal is fully resolved and the Amended Judgement paid. Alternatively, if the matter needs to be retried in front of a jury, followed by further appeals, a distribution to creditors is likely to be a number of years away. In a "worst case" scenario where the Liquidators lose on appeal, the Liquidators would recover nothing from Deutsche Bank, one of the primary parties on whom they have focused the recovery efforts of the Liquidations. For these reasons, while the Settlement Sum represents a significant discount to the Amended Judgment, the Liquidators, in the good faith exercise of their business judgment have determined that it is an appropriate settlement that is in the Note Issuers' best interests because it favorably and immediately resolves this litigation and the ongoing appellate risks.

16. Second, I am informed that this Court is likely to assess the difficulty of recovery on the Amended Judgment as part of its analysis of the Settlement Motion. The Liquidators have addressed the appellate risks to the Amended Judgment above and believe that those risks can also be considered in the context of the second factor. Beyond the appellate risks, the Liquidators do not believe that there is a material risk of non-recovery of any judgement (including the current Amended Judgment) that survives appeal. This assessment derives from the identity of the defendant, which is one of the largest financial institutions in the world.

17. Third, the Liquidators considered the complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attendant to it. The claims that the Settlement Agreement resolves are exceedingly complex and have required (and will continue to require through the appeal) substantial time to resolve. Deutsche Bank played an important part in the Biscayne Capital Scheme but was not the only player. The litigation against Deutsche Bank took two years to bring to trial. Deutsche Bank succeeded on certain claims on motions to dismiss,

other claims at summary judgment and directed verdict, and ultimately prevailed on all remaining claims at trial other than the claim for negligence. The Liquidators anticipate that Deutsche Bank will continue to pursue every available defense until ultimate disposition. The complexity of the matter has led, and will continue to lead, to substantial expense, inconvenience, and delay in finally liquidating the Amended Judgment. Therefore, the Liquidators believe this factor also supports approval of the settlement.

18. Fourth, the Liquidators considered the paramount interest of the creditors and properly deferred to their reasonable views. The Liquidators have had extensive interactions with the Ad Hoc Committee throughout the settlement process. The Ad Hoc Committee acts as a voice for the interests of creditors in the Liquidations and supports the Settlement Agreement. Similarly, the Cayman Court has sanctioned the Liquidators' entry into the terms of the Settlement Agreement. As the court where the Note Issuers have their center of main interests and the court that oversees the Liquidations at the broadest level, the Liquidators believe that it is appropriate to give deference to the Cayman Court's judgment in assessing the "paramount interests of creditors," just as it is important to give deference under principals of comity. For this reason, the Liquidators submit that this factor supports entry into the settlement.

19. There are other substantial reasons to conclude that the Settlement Agreement is consistent with the paramount interest of creditors. The consideration provided under the Settlement Agreement is substantial. Indeed, based upon where these Liquidations stood at the commencement of these Chapter 15 Cases – with no money, few hard assets, and extraordinarily complex claims to investigate – the Settlement Agreement represents a singular achievement.

Among other things, it will assure a material distribution to creditors.[3] Additionally, in the Liquidators' view, entry into the Settlement Agreement maximizes the likely net recovery from claims against Deutsche Bank, considering all relevant factors, including the risk that the Amended Judgment is vacated on a rationale that either forecloses any recovery or requires years of additional litigation in the trial and appellate courts, and the costs of liquidating the claims.

20. As noted above and in the Settlement Motion, the settlement provides for gross consideration of $43,500,000. There are certain costs that will be paid from that sum directly. The Liquidators' litigation counsel related to the litigation against Deutsche Bank is Bondurant, Mixson & Elmore LLP ("**BME**"). BME was initially retained on an hourly basis. BME and the Liquidators thereafter agreed to a contingent fee to allow the litigation to be pursued against Deutsche Bank. In connection therewith, BME agreed to advance litigation related costs. BME's contingent fee agreement was approved by the Cayman Court at the outset of the litigation. BME advanced costs of approximately $1,500,000 related to the litigation. Additionally, BME's contingent fee is approximately $16,000,000.

21. The Liquidators also retained EFR Law as Florida counsel and Campbells as Cayman Islands counsel in connection with the Deutsche Bank litigation. The contingent fee referenced above represents the total contingent fee for all three law firms (which amounts the three firms have agreed to share).

22. After payment of these amounts, the Liquidators anticipate that they will receive a net amount under the Settlement Agreement of between $25,500,000 and $26,000,000.

---

[3] The Liquidators are not able to estimate the quantum of a distribution to creditors at this time. The claims adjudication process has not been completed at this time. The face amount of claims submitted to the Liquidators for adjudication exceeds $200 million.

23.     Upon my direction, on January 30, 2024, the Settlement Motion and Notice of Hearing [D.E. 264] was served via First Class Mail upon all Noteholders and other creditors that have filed a proof of debt in the Chapter 15 Debtors' Cayman proceedings and via email upon those claimants for whom the Liquidators have an email address.

I declare under penalty of perjury under the laws of the United States of America, 28 U.S.C. § 1746, that the foregoing is true and correct.

Dated this 23 day of February 2024.

_____
Michael Pearson

DocuSigned by:
04F4C70074D8418...